## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **PHILLIP L. HILL, JR,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 1:22-00064-N** |
| ) | |
| **KILOLO KIJAKAZI,** *Acting* ) | |
| ***Commissioner of Social Security*,** ) | |
| **Defendant.** ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Phillip L. Hill, Jr. brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 12, 13) and those portions of the certified transcript of the administrative record (Doc. 8) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

### I.   *Procedural Background*

Hill protectively filed the subject SSI application with the Social Security

---

[1] "Title XVI of the [Social Security] Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 10, 11).

Administration ("SSA") on June 14, 2017. After it was initially denied, Hill requested, and on July 6, 2021, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On August 10, 2021, the ALJ issued a partially favorable decision on Hill's applications, finding that he was disabled under the Social Security Act from the date of his application until he turned 18 years old, but was thereafter not disabled under the Act, and therefore not entitled to benefits, through the date of the ALJ's decision. (*See* Doc. 8, PageID.57-83).

The Commissioner's decision on Hill's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's partially favorable decision on December 22, 2021. (*Id.*, PageID.46-50).[3] Hill subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a

---

[3] An ALJ issued an unfavorable decision on Hill's application on May 15, 2019. (*See* Doc. 8, PageID.170-198). However, on April 27, 2020, the Appeals Council issued an order vacating that decision and remanding the case for a new ALJ hearing and decision. (*See id.*, PageID.199-203). On remand, a different ALJ was assigned to Hill's case and issued the partially favorable decision that constitutes the Commissioner's final decision subject to review in this action.

civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide

the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[5] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her

position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)

---

(11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

(per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's

decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for SSI requires a showing that the claimant is "disabled," 42 U.S.C. § 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7]     The Court will hereinafter use "Step One," "Step Two," etc. when referencing

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*,

---

individual steps of this five-step sequential evaluation.

As noted previously, Hill attained age 18 while the subject application was pending, and was thereafter considered an adult for purposes of the SSA's disability determination. Claimants under 18 are evaluated under a different sequential process than that for adults. *See, e.g.*, *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850-51 (11th Cir. 2015). However, Hill was awarded benefits for when he was under 18 during the relevant, and detailed discussion of the child sequential evaluation process is unnecessary to resolve the issues raised in this action.

764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's]

medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Hill had not engaged in substantial gainful activity since June 14, 2017, his application date.[8] (Doc. 8, PageID.66). At Step Two,[9] the ALJ determined that Hill had the following severe impairments

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore*, 405 F.3d at 1211

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work

since attaining age 18: oppositional defiant disorder; impulse and conduct disorder; asthma; intellectual disorder; specific learning disorder with reading disorder; personality disorder; and gastroesophageal reflux disease (GERD). (Doc. 8, PageID.66, 68).[10] At Step Three,[11] the ALJ found that, since attaining age 18, Hill did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 8, PageID.69-71).

At Step Four,[12] the ALJ determined that, since attaining age 18, Hill had the

---

experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[10] The ALJ found that Hill had those same severe impairments "[p]rior to attaining age 18," had "not developed any new impairment or impairments since attaining age 18," and "continued to have a severe impairment or combination of impairments" after attaining age 18. (Doc. 8, PageID.66, 68)

[11] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[12] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine

residual functional capacity (RFC) "to perform medium work as defined in 20 CFR 416.967(c)[ 13 ] except [he] can perform simple, routine, repetitive tasks with occasional contact with coworkers, supervisors, and the general public and with few workplace changes that are introduced gradually; and can have no exposure to concentrated odors, dust, fumes, gases, or extreme temperatures." (Doc. 8,

> whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

13 "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "medium" work are as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).

PageID.71-74).

The ALJ then found that Hill had no past relevant work. (*Id.*, PageID.74). However, after considering the testimony of a vocational expert,[14] the ALJ found at Step Five that that there existed a significant number of jobs in the national economy as a store laborer (approximately 21,000 jobs), hand packager (approximately 41,000 jobs), and counter supply worker (approximately 61,000 jobs) that Hill could perform given since attaining age 18, considering his RFC, age, education, and work experience. (Doc. 8, PageID.74-75). Thus, the ALJ found that Hill was not under a disability as defined by the Social Security Act since attaining age 18 through the date of the ALJ's decision. (*Id.*, PageID.75).

## IV.   *Analysis*

Hill argues the ALJ reversibly erred by inconsistently considering the testimony of Amy Hamilton, Ph.D, a medical expert who reviewed the evidence in Hill's case file and testified at the ALJ hearing.[15] The undersigned disagrees.

---

[14] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

[15] Medical experts (MEs) "are physicians, mental health professionals, and other medical professionals who provide impartial expert opinion at the hearing level on claims under title II and title XVI of the Social Security Act. MEs provide opinions by either testifying at a hearing or responding to written interrogatories. An administrative law judge (ALJ) may use an ME before, during, or after a hearing. The need for ME opinion evidence is generally left to the ALJ's discretion, except in the circumstances outlined in Hearings, Appeals and Litigation Law (HALLEX) manual I-2-5-34 B … The primary reason an ALJ will request an ME opinion is to

Medical opinions are one category of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. § 416.913(a). Under the Social Security regulations applicable to Hill's application,[16] a "medical opinion" is defined as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §

---

help the ALJ evaluate the medical evidence in a case. When needed, use of an ME will result in a more complete record to support the ALJ's conclusion on the ultimate issue of disability … An ME's opinion is not binding on an ALJ." HALLEX I-2-5-32(A)-(B) (last updated Aug. 29, 2014) (https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-32.html).

[16] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. § 416.920c apply to SSI claims filed on or after March 27, 2017, such as the subject application. *Compare* 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

416.913(a)(2).

The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …, including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, "[w]hen a medical source provides one or more medical opinions …, [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." *Id.* § 416.920c(c). "The most important factors … are supportability … and consistency…" 20 C.F.R. § 416.920c(a). *Accord id.* § 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … , the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." *Id.* § 416.920c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions … in [the] determination or decision." *Id.* § 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or

more medical opinions or prior administrative medical findings about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" *Id.* §416.920c(b)(3).

As the ALJ noted, and both parties agree, "Dr. Hamilton … testified that [Hill]'s impairments met listings 112.08 and 112.11 prior to [Hill] attaining age 18[,]" and "that it is likely that [Hill]'s impairments would meet listing 12.08 and 12.11 after age 18…" (Doc. 8, PageID.67, 73). The ALJ found Dr. Hamilton's testimony was "persuasive as to the period prior to [Hill] attaining age 18[,]" and agreed with Dr. Hamilton that Hill met both Listing 112.08 and Listing 112.11 prior to attaining age 18. (*See id.*, PageID.66-68). However, the ALJ found Dr. Hamilton's testimony "not persuasive as to the period since [Hill] attaining age 18[,]" and determined that Hill did not meet or medically equal Listing 12.08 or 12.11, or any other Listing, since attaining age 18. (*See id.*, PageID.68-71, 73-74).

Dr. Hamilton stated at the ALJ hearing that "there aren't a lot of adult records[, a]nd those that do exist kind of paint [Hill] as well—oh, he's doing great …, he's pleasant, he's no problem, he's stable…" (*Id.*, PageID.125). Dr. Hamilton admitted: "Based on the records I have, which are very limited, sticking strictly to those facts, I can't see that he would meet a listing for the corresponding conditions in adulthood." (*Id.*, PageID.126). She stated, however, that she found the adult records "very difficult to believe that he would … have such a change[,]" and opined that Hill would meet Listing 12.08 and 12.11 as an adult because, "based on clinical experience and a lot of years at school, people don't outgrow learning disabilities

and borderline intellectual functioning[,]" which are "persistent." (*Id.*).

Contrary to Hill's contention, the undersigned finds that the ALJ gave sufficient reasons, supported by substantial evidence, for finding Dr. Hamilton's testimony not persuasive for the period after Hill attained age 18. As noted previously, "supportability"—how much objective support and explanation a medical source provides to support his or her opinion—and "consistency"—the opinion's consistency with the record evidence from other sources—are the two most important factors in determining the persuasiveness of any medical opinion. As Dr. Hamilton never examined or evaluated Hill personally, but only reviewed the other evidence of record, she did not provide her own objective evidence in support of her opinion.[17] Dr. Hamilton also admitted that her opinion as to whether Hill continued to meet a Listing after attaining age 18 was not consistent with the "very limited" records from that period, which she said "paint[ed] [Hill] as … doing great…, … pleasant, … no problem, [and] stable." Indeed, she went so far as stating that, "[b]ased on the records [she] ha[d], [and] sticking strictly to those facts," she could not "see that he would meet a listing … in adulthood."[18] While Dr. Hamilton did

---

[17] Indeed, an ALJ "must never ask or permit an ME to perform an examination of a claimant." HALLEX I-2-5-34(A)(2) (last updated Jan. 21, 2020) (https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-34.html).

[18] At oral argument, Hill's counsel attempted to excuse the paucity of mental health records since Hill attained age 18 by explaining that Hill could no longer be compelled to attend mental health treatment by his parents once he reached adulthood, and had resisted doing so since then. That excuse is unavailing, for it is well established that "the claimant bears the burden of proving that he is disabled, and, consequently, … is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276.

assert that her opinion was supported by her professional experience and training with mental impairments, the ALJ acted reasonably, and well within her authority, in determining that these generalized factors did not overcome a lack of objective evidentiary support for Hill continuing to meet a Listing after turning 18.[19]

Moreover, the ALJ did not arbitrarily adopt Dr. Hamilton's opinion as to disability prior to Hill turning 18 while rejecting the opinion as to disability after Hill turned 18. Rather, the ALJ's decision adequately demonstrates that she considered Dr. Hamilton's testimony in conjunction with the other evidence of record in determining that Hill met a Listing prior to age 18 but did not after, determining that Dr. Hamilton's opinion was "consistent with the medical observations during th[e] period" before Hill turned 18 but was "not consistent with the medical observations during th[e] period" after he turned 18. (Doc. 8, PageID.68, 74). The ALJ also provided a thorough explanation of how she evaluated disability under listings 112.08, 112.11, 12.08, 12.11—outlining the relevant factors and discussing how the evidence supported or failed to support each—and did not simply defer to Dr. Hamilton's opinion on the issue.[20]

---

[19] Moreover, "[s]tatements about whether or not [an] impairment(s) meets or medically equals any listing in the Listing of Impairments[,]" even when provided in medical opinions, are "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled ..." 20 C.F.R. § 416.920b(c)(3)(iv).

[20] Hill asserts: "Dr. Hamilton, in complying with her role of medical expert, was asked to use her psychological knowledge and expertise so as to determine the severity of the Plaintiff's impairments. Dr. Hamilton did just that in concluding that the Plaintiff would continue to meet the listings despite the lack of medical records." (Doc. 12, PageID.1758). In arguing this point, Hill cites to provisions of the SSA's Medical Expert Handbook (Aug. 2017 ed.)—which provides guidance to MEs called to

Finally, Hamilton's brief argues that the ALJ's "reliance on the [Hill]'s 'essentially routine and/or conservative' as support for the Plaintiff not meeting Listing 12.11 was also erroneous" because, "[a]s Dr. Hamilton indicated, [Hill]'s neurodevelopmental disorder is lifelong and would not be affected by, made better by, or corrected with mental health treatment." (Doc. 12, PageID.1758). First, as was noted previously, Dr. Hamilton's generalized opinion that people with the kinds of mental disorders Hill has tend not to improve was not bolstered by the objective evidence in Hill's case, which Dr. Hamilton admitted showed normal findings and did not support Hill meeting a Listing after turning 18 despite meeting a Listing prior to that age. Second, Hill has failed to address how a child claimant's meeting Listing 112.08 or 112.11, both of which apply only to claimants under age 18, *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 112.00 (setting out the "listings for mental disorders for children"), should automatically compel a finding that the claimant meets Listing 12.11 once attaining age 18.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Hill's application for benefits is due to be

---

testify in Social Security disability hearings—stating that "[t]he ALJ's primary reason for seeking the advice of an ME is to gain a better understanding of the medical evidence in the cases[,]" and that "[a]n ME provides both factual information and expert opinion based on his or her medical or psychological knowledge and knowledge of SSA's rules." SSA Medical Expert Handbook, p.8 (Aug. 2017 ed.) (https://www.ssa.gov/appeals/public_experts/Medical_Experts_(ME)_Handbook-508.pdf). However, even that publication makes clear that "[t]he ALJ will not rely on [an ME's] testimony alone to make his or her decision about disability or to make medical findings that go into that decision[, and instead] will consider [the ME's] testimony, along with the other evidence in the case record, including the claimant's testimony at the hearing and any other testimony." *Id.*, p.10. Thus, the Medical Expert Handbook did not require the ALJ to accept Dr. Hamilton's testimony.

**AFFIRMED**.

## V.    *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision partially denying Hill's June 14, 2017 SSI application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

A final judgment consistent with this opinion and order shall issue separately under Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 26th day of October 2022.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**